## No. 12,663.

INDUSTRIAL COMMISSION ET AL. *v.* DIVELEY.
(294 Pac. 532)

Decided November 21, 1930.   Rehearing denied December 29, 1930.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. JOHN S. UNDERWOOD, Attorney General, Mr. ARTHUR L. OLSON, Assistant, for plaintiffs in error.

Mr. JOHN S. FINE, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

MRS. Chester L. Diveley, defendant in error, hereinafter referred to as claimant, filed before the Industrial Commission of Colorado, one of the plaintiffs in error, hereinafter referred to as the commission, her claim for compensation on account of the death of her husband, Chester L. Diveley, hereinafter referred to as employe. In claimant's "Dependents Notice and Claim for Compensation," it is asserted that, on August 17, 1930, employe died of peritonitis resulting from a ruptured appendix, which was caused by an accident arising out of and in the course of his employment. A hearing upon this claim before the referee resulted in an order denying compensation, which order was subsequently affirmed by the commission in its findings of fact and award, and in its supplemental award. Claimant commenced an action in the district court to modify or vacate the awards of the commission, and, upon trial in that court, the judgment was that the "award of the Commission be set aside and the case remanded, and that the Commission be ordered to make a finding and award in favor of the claimant in accordance with the provisions of law." To review the judgment of the district court, the commission, the insurance carrier, and the employer prosecute this writ.

Chester L. Diveley was, and for several years prior

to August 15, 1929, had been, an employe of the Western Pottery Company, in the capacity of night watchman. On the night of August 15, 1929, he was ordered to clean the boiler used at the plant of his employer. To do this it was necessary for him to climb up about ten feet on a ladder to remove the manhead, which weighed approximately 100 pounds, carry it down the ladder to the floor, and then carry it up again to replace it after he had finished the cleaning.

Claimant testified that about eight o'clock p. m. on the night of August 15, 1929, her husband called her on the telephone from the plant and said: ''Mother, in washing the boiler when I lifted that manhead I was severely hurt, because I have got severe pains in the abdomen and I am suffering intensely,'' and requested her to send for him. There was no one at employe's home who could be sent at that time and about one o'clock a. m. Sunday her husband called again, and then claimant sent her son to bring him home. The son testified that when he reached his father at the plant on Sunday morning, August 16, 1929, the following conversation occurred between them with reference to the accident: ''I asked him, what is the matter, Dad? He said, I strained myself bad lifting that manhead: I had an awful strain: I went to put it up in place and felt an awful pain, I don't know what is the matter, it feels like something—I don't know what is the matter.'' The employe was removed to his home, and during the night was treated by his wife without the aid of a physician. During Sunday he apparently recovered somewhat, and on Sunday night returned to his regular duties. About midnight Sunday he again called his wife on the telephone, and, she testified, he again complained of severe pains and asked that she send for him immediately. His two sons immediately went to their father, and while one of them remained to attend to his father's duties, the other one took him home, and at once attempted to get a physician for him. The physician came in the early morning of August 17th,

and shortly thereafter employe was removed to the hospital where he was operated on for appendicitis. The appendix was found to be ruptured, and he died of peritonitis. No one was present at the Western Pottery Company's plant at the time of the alleged accident, and the insurance carrier objected to the testimony of claimant and her two sons concerning the statements made by the employe with reference thereto, contending that this testimony was hearsay and therefore inadmissible. This evidence, it is true, is hearsay, but is admissible under an exception to the hearsay rule, and as part of the res gestae. *Travelers Insurance Co. v. Mosley,* 75 U. S. (8 Wall) 397, 19 L. Ed. 437; *Armour & Co. v. 'Industrial Commission,* 78 Colo. 569, 572, 243 Pac. 546; *New Jersey Co. v. Richey,* 85 Colo. 376, 380, 275 Pac. 937; 3 Wigmore on Evidence (2d Ed.) §1747.

The burden of proof was upon the claimant to establish (1) the accident arising out of, and in the course of employment, and (2) that the injuries for which compensation is claimed were the proximate result of the accident; i. e., the direct causal connection between the accident and the injuries. All accidents to employes are not compensable nor are all injuries to employes compensable, but, under the provisions of the Workman's Compensation Act, only those accidents which arise out of and in the course of employment, and result in injuries, are compensable. There must be a direct causal connection between the accident and the injuries before one can establish a claim under the Workman's Compensation Act, and, as we have said, the burden of proving the direct causal connection is upon the claimant. *Olson-Hall v. Industrial Commission,* 71 Colo. 228, 229, 205 Pac. 527.

The theory of the claimant is that the strain heretofore mentioned caused the acute appendicitis and the ruptured appendix or that the employe had acute appendicitis and the strain accelerated the rupture causing

peritonitis which resulted in death. In either event she contends that she is entitled to compensation.

The doctors' testimony with reference to the effect of a strain upon one who is suffering with acute appendicitis is that, under certain circumstances, the strain might accelerate the rupture of the appendix; their testimony with reference to a strain causing acute appendicitis is that such could not be the result. The testimony of claimant and her two sons, as well as fellow employes and employer, indicates that the employe was physically strong, and never suffered from any physical ailment. There is no evidence from which it can be found either directly or inferentially that the employe suffered from either chronic or acute appendicitis prior to the Saturday night when the boiler was cleaned. The medical testimony would seem to indicate that the appendix might have ruptured at the exact moment it did irrespective of any injury, and the record leaves a doubt as to whether or not the accident had any direct causal connection whatever with the injury of which the employe died. The claimant proved the accident as well as the cause of death, but there rested upon her the additional burden of proving the causal connection between these. Upon the question of causal connection the evidence was conflicting, and the findings of the commission, based upon conflicting testimony, cannot be disturbed by the courts. This has been so frequently determined by this court that the citation of authorities to this effect is deemed unnecessary.

The judgment of the district court is therefore reversed, and the cause remanded to that court with instructions to set aside, vacate and hold for naught the judgment heretofore entered herein, and in lieu thereof, to enter a judgment affirming the award of the commission.

Mr. Chief Justice Whitford and Mr. Justice Campbell not participating.