## No. 13,163.

### H. C. Lallier Construction and Engineering Company et al. *v.* Industrial Commission et al.

(17 P. [2d] 532)

**Decided December 12, 1932.**

Mr. Edgar McComb, Mr. Milton D. Green, for plaintiffs in error.

594

Mr. CLARENCE L. IRELAND, Attorney General, Mr. ARTHUR L. OLSON, Assistant, Mr. A. M. KIME, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THE district court affirmed an award of the Industrial Commission allowing compensation in the sum of $3,037.50 to Mrs. Nellie Beaman for the death of her husband claimed to have resulted from an accident arising out of and in the course of his employment. Plaintiffs in error, the employer and the insurance carrier, here seek a reversal contending that the award was based solely upon hearsay testimony.

The record discloses that decedent, Milton B. Beaman, husband of claimant, had worked for the H. C. Lallier Construction and Engineering Company for some time prior to December 12, 1931. On that day he put in a full day's work at the company's plant on West Colfax avenue. He stopped work at 4:30 p. m. and upon his return home between five and six, he told his wife: "I don't want no supper. I came near getting killed today. A beam fell; we was putting up a beam and it slipped and fell and struck me, and I don't want no supper." Counsel have consistently and continuously objected to this testimony on the ground that it is hearsay. The next day decedent was removed to the hospital, where he was operated upon for a ruptured appendix, and died on December 15th. The undertaker testified that when preparing the body for burial he noticed a blue spot on the abdomen about three and one-half inches by ten inches long but did not know what caused this mark. The hospital report contained this statement: "Onset while at work December 12, felt a sharp stabbing pain in right side of the abdomen. This was experienced while erecting a heavy beam. He thought he injured himself at this

time.'' The ''proof of death'' certificate filed with the commission states that the remote cause of death was ''ruptured appendix with a personal history from the patient stating a traumatic injury on Saturday before taking sick on Sunday morning.'' From the foregoing it clearly appears that except for the statement made by the decedent to his wife and to the doctor as to the cause of his injuries, the record is entirely void of any evidence showing or tending to show when, if at all, and how deceased was injured.

The employer and the insurance carrier introduced the following testimony. Frank Overton, the plant superintendent, stated that decedent was in his employ and was working under his supervision; that they (himself, Jackson, Lallier, Norby and decedent) were making an arch for the roof and putting up a jim-pole; that ''while we were setting up a jim-pole which had three guy-wires on it, and when we got it straight up—to get it up Mr. Beaman was using about a five-foot bar and he was sliding it along the concrete and I was lifting it—after we got it set up one of the boys let loose of the rope and it fell over onto the wall of the building.'' ''He [Beaman] was to my right and the pole fell to my left''; that the slipping or falling of the pole did not in any way affect Mr. Beaman; that he was in a position to observe decedent at all times; that he saw no accident that day and none was reported to him by Beaman; that decedent worked until 4:30 p. m., cranked his car and went home.

Norby testified that he was working with Beaman all day; that he did not see an accident and heard no complaint made; that when the jim-pole slipped ''Overton was at the bottom of it, he [decedent] was on one guy line along with Mr. Overton.'' That he could not say whether deceased had hold of the pole when it slipped because ''I was busy with my end of the work.''

Frank Jackson testified as follows:

''A. We was putting up a jim-pole.

"Q. That is at the plant on the Golden Road? A. Yes.

"Q. Was Mr. Beaman working with you on that job? A. He was.

"Q. Were you in position to observe him and see what he was doing all that day, Saturday? A. I was.

"Q. Did you observe any accidents or anything happening to him? A. No, sir.

"Q. Did he make any complaint about being hurt? A. None whatever.

"Q. When this jim-pole slipped, were you there and did you see it? A. I was on one of the guy-wires.

"Q. Did you observe Mr. Beaman at the time that slipped? A. I did.

"Q. Did anything strike him or anything touch him at that time? A. It did not.

"Q. Did anything touch or affect him in any way? A. It did not.

"Q. He was not hurt at that time? A. No, sir.

"Q. He worked a full day and quit at 4:30? A. Yes."

The foregoing summarizes all of the evidence in connection with decedent's claimed injury.

Notwithstanding the positive testimony of Overton, Norby and Jackson to the contrary, it may be that deceased received an injury when the "jim-pole" slipped and that his statements to his wife later that afternoon were a recitation of the true facts. However, the burden was upon claimant to show by sufficient, substantial and admissible evidence that an accident occurred; that it arose out of and in the course of employment of decedent and resulted in his death. Claimant contends that this burden is sustained by her husband's statements to her; that such are admissible as part of the res gestae and that *Industrial Com. v. Diveley,* 88 Colo. 190, 294 Pac. 532, is here controlling and conclusive. In the Diveley case, it appeared that decedent was a night watchman for the Western Pottery Company; that he was ordered to clean the boiler used at the plant; that in order to do

this it was necessary for him to climb up about ten feet on a ladder to remove the manhead, which weighed approximately one hundred pounds, carry it down the ladder to the floor and then carry it up again to replace it after he had finished the cleaning. Claimant testified that about 8 o'clock her husband called her on the telephone and said, "Mother, in washing the boiler when I lifted that manhead I was severely hurt, because I have got severe pains in the abdomen and I am suffering intensely," and requested her to send for him. We held this testimony to be admissible under an exception to the hearsay rule and as part of the res gestae and in support thereof cited the following: *Travelers Insurance Co. v. Mosley*, 75 U. S. (8 Wall) 397, 19 L. Ed. 437; *Armour & Co. v. Industrial Commission*, 78 Colo. 569, 572, 243 Pac. 546; *New Jersey Co. v. Richey*, 85 Colo. 376, 380, 275 Pac. 937.

█ Wigmore on Evidence announces the rule thus:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. * * *" 3 Wigmore on Evidence (2d Ed.), §1747.

"Time of the utterance. The utterance must have been before there has been time to contrive and misrepresent, i. e., while the nervous excitement may be supposed still

to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.'' 3 Wigmore on Evidence (2d Ed.) §1750.

██ Under these cases and the great weight of authority in order for hearsay testimony of this character to be admissible the element of spontaneity must clearly appear, otherwise the reason for the rule is ignored and its safeguarding features are destroyed. Here there was no testimony showing at what time the ''jim-pole'' slipped and consequently it does not appear how much time elapsed between such occurrence and decedent's statement to his wife. The element of spontaneity is entirely lacking. In such circumstances, the doctrine announced in *Olson-Hall v. Industrial Commission*, 71 Colo. 228, 205 Pac. 527, is controlling. Therein we stated at page 229, et seq.:

''There is no direct proof of the accident. The claimant supports her case wholly with certain reports, and alleged conversations said to have taken place with Olson at various times subsequent to the supposed accident, at his home and at the hospital where he died. There is not a scrap of competent testimony to show that there ever was an accidental injury at all.

''It is elementary in compensation cases, as in other actions, that the burden of proof is upon the party asserting the claim. It was the duty of claimant to show that the death of her husband was the proximate result of an accident arising out of and in the course of his employment. * * *

''It is true that the workmen's compensation statutes of most of the states provide that industrial commissions shall reach their conclusions without regard to technical rules of evidence. It is manifest, however, that the rule against hearsay is not technical, but vitally substantial, and may not properly be disregarded under such statutory provisions without grave danger of collusion, imposition and injustice. If a claimant be permitted to make out a case upon the essential facts of accidental injury

upon hearsay testimony alone there is no limit to the frauds and wrongs that may be encouraged and made possible." See also *Armour and Co. v. Industrial Com.*, 78 Colo. 569, 243 Pac. 546; *New Jersey Co. v. Richey*, 85 Colo. 376, 275 Pac. 937; *Zion's Co-op. Merc. Inst. v. Industrial Com.*, 70 Utah 549, 262 Pac. 99; *Mayeur v. Mining Co.*, 106 Kan. 123, 186 Pac. 1035; *Baxter v. Jordan*, 158 Tenn. 471, 14 S. W. (2d) 717; *Ginsberg v. Adding Machine Co.*, 204 Mich. 130, 170 N. W. 15; *Hartley v. State Industrial Acc. Com.*, 123 Ore. 310, 261 Pac. 71; *McDowell v. Security Union Ins. Co.* (Texas), 10 S. W. (2d) 782; *Massachusetts Bonding Co. v. Free*, 71 Ind. App. 275, 124 N. E. 716; *Aetna Life Ins. Co. v. Ryan*, 255 Fed. 483.

Eliminating, because hearsay, the statements of deceased to his wife and the hospital record and proof of death, there is no testimony showing that decedent received an injury causing death and arising out of and in the course of his employment.

Accordingly the judgment is reversed and the cause remanded for further proceedings in accordance herewith.