[No. 26282. *En Banc.* August 2, 1937.]

EDITH M. SHEPPARD, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 70 P. (2d) 792.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Wright & Wright* and *Vanderveer & Bassett,* for respondent.

BEALS, J.—The plaintiff, Edith M. Sheppard, and Herbert E. Sheppard were for many years husband and wife and residents of the city of Seattle, where they maintained a home occupied by themselves and their two grown daughters. For a long time prior to 1934, Mr. Sheppard had been in the employ of the Washington Laundry as a driver. The home life of the Sheppards was happy. Mr. Sheppard's accounts with his employer were in perfect order. He was not indebted to any person, and, as far as the record shows, his life was free from worry of any kind, save some threat to the security of his employment, he having been warned that he would have to increase the income from his laundry route. This he had done, and the record indicates that his job was fairly secure. The occupation of laundry driver is classified by the workmen's compensation act as extrahazardous, and it is admitted that Mr. Sheppard was within the protection of the act.

On the morning of October 27, 1934, Mr. Sheppard

left his home in company of a friend and neighbor, Gus Seefelt, who was also employed by the Washington Laundry as a driver, and proceeded to his place of employment. Prior to leaving his home, Mr. and Mrs. Sheppard discussed a dinner engagement which they had for that evening. On arrival at the plant, Mr. Sheppard loaded his truck with the laundry which he was to deliver, and departed.

It appears that, somewhat prior to noon, Mr. Sheppard, while driving his truck down a steep grade on Gilman avenue, lost control of his car, which left the paved portion of the highway and struck a telephone pole a glancing blow, after which the truck continued down the hill and finally stopped, after colliding with a parked automobile owned by a member of the city fire department. The exact nature of the collision between the truck and pole is not shown, but, after the truck came to rest, a front wheel was found to be damaged, and there was a considerable dent on the left side near the driver's seat.

The owner of the car with which Mr. Sheppard's truck collided appeared upon the scene immediately after the accident and spoke to Mr. Sheppard, who had stepped down from the truck. This witness testified that he asked Mr. Sheppard if he was hurt; also inquiring concerning the repair of the parked car. The witness stated that Mr. Sheppard apparently did not desire to talk about the matter, appearing nervous and "rather shaky." Mr. Sheppard did not complain of having received any injury, and, as it seemed to the witness, did not desire to discuss the accident or its results. It appeared that some implement had slipped under the foot brake, and that this at least contributed to the driver's inability to control the truck.

The witness, not knowing what had occasioned the accident, thought that possibly Mr. Sheppard had been

drinking. It having been established that this surmise was not well founded, the witness and a bystander assisted in placing Mr. Sheppard's truck in condition to proceed on its way. As the damages to the parked car were slight, the owner thereof was not particularly concerned about the matter, and Mr. Sheppard's truck having been placed in order, he drove away. He later appeared at the home of a customer, Mrs. Alice Johnson, over a mile from the scene of the accident, at about a half after one o'clock.

Mrs. Johnson testified that she had known Mr. Sheppard about a year and a half, during which period he had been collecting and delivering her laundry. She stated that, upon the day in question, he appeared excited, flustered, and hurried; that his face was somewhat flushed, and that his eyes had an unusual appearance; that, instead of being cheerful and talkative, Mr. Sheppard was rather quiet. He said nothing about having had an accident or having received any injury. Mr. Sheppard was next seen at about two o'clock, when he stopped his truck on Olympic place, turned off the motor, and locked the ignition, leaving the key in the switch. A witness saw Mr. Sheppard walk down the street, proceeding in the general direction of the waterfront, which was two or three blocks distant.

As far as the record shows, Mr. Sheppard was not again seen alive, but, on November 15th following, his body was found on the shore of Whidby Island. A valuable watch and his purse containing a considerable sum were found in his pockets. His overcoat, together with four bundles of laundry to be delivered and a suit of clothes which he had picked up to be cleaned, had been found in the truck. An autopsy was performed, the surgeon testifying that the body had been in the salt water for two or three weeks. The body bore evidence of contusions, and the right ankle bone was

broken. The surgeon stated that, in his opinion, death was occasioned by drowning. Because of the condition of the head, it was not determined whether or not the skull had been fractured. It appears that a body entering the water near Elliott bay would probably have been carried to the shore of Whidby Island at or near the place where Mr. Sheppard's body was discovered.

Mrs. Sheppard filed a claim with the department of labor and industries, which rejected the same. After an appeal to the joint board, evidence was taken before an examiner, and, after a hearing, the action of the supervisor in rejecting the claim was sustained. Mrs. Sheppard then appealed to the superior court, where she seasonably demanded a jury trial. A motion to suppress the demand for a jury having been denied, the action came on regularly for trial before the court and a jury, the latter returning a verdict in favor of Mrs. Sheppard.

Counsel for the department, having been present in court when the verdict was returned, orally moved for an order vacating the verdict of the jury and for judgment in the department's favor notwithstanding the verdict, stating at the time that he did not move for a new trial. No written motion was interposed, but the oral motion was argued at a later date. Counsel for Mrs. Sheppard objected to the motion being considered, for the reason that no proper motion had ever been made. The court, however, listened to argument and indicated that the motion would be granted. Upon further reflection, however, the trial court was of the opinion that no valid motion had been made, and the judgment upon the verdict was entered, from which the department has appealed.

Several errors are assigned, only two of which need be noticed, namely, the denial of appellant's motion for a directed verdict or in the alternative for judgment in

appellant's favor as matter of law, interposed at the close of respondent's case (appellant having introduced no evidence save a report made by respondent's daughter to the police department, which was admitted by stipulation), and the entry of judgment in respondent's favor. These assignments present the question of the sufficiency of the evidence to support the verdict and the judgment entered pursuant thereto.

█ Under our practice, the making of a motion for a new trial, save as to the review of certain trial errors, is not a prerequisite to the review of a judgment on appeal, and when, as here, the sufficiency of the plaintiff's evidence to support a judgment was seasonably challenged and the challenge denied, no motion by the defendant for judgment in his favor notwithstanding an adverse verdict need be made in order to present to this court on appeal the correctness of the ruling on the challenge. Of course, if, after an application for judgment in defendant's favor as matter of law at the close of plaintiff's case, the defendant introduced evidence, the challenge should be renewed at the close of the entire case, if any legal inference favorable to plaintiff can be drawn from the evidence introduced by the defendant. Here, the only evidence introduced by appellant was the police record of the report made by respondent's daughter concerning her father's disappearance, and this report contains nothing which by any remote possibility can be considered as aiding any of respondent's contentions.

The question of the sufficiency of respondent's evidence to support a verdict in her favor is thereby presented by the record, without considering the sufficiency of the oral motion made by appellant's counsel for judgment in appellant's favor notwithstanding the verdict. It is therefore unnecessary to discuss the question of whether a motion for judgment notwith-

standing the verdict must be presented in written form or whether the same may be made orally.

The record contains no evidence as to where the deceased entered the waters of Puget Sound, nor any evidence as to the time of that event, save that of the surgeon who performed the autopsy. He testified that the body appeared to have been in the water two or three weeks. Manifestly, the burden rested upon the respondent to introduce evidence which would support a finding of the jury to the effect that Mr. Sheppard, during the course of his employment, received some injury (within the statutory definition), and that from such injury his death resulted.

The evidence shows beyond question that, during the course of his employment, Mr. Sheppard's truck ran away, striking a pole and injuring a wheel, so that it had to be changed before the car could proceed, and denting the body of the truck near the driver's seat. There is no evidence that, in the accident, Mr. Sheppard suffered any physical injury whatsoever. The surgeon who performed the autopsy testified, in response to hypothetical questions propounded by respondent's counsel, that, in his opinion, Mr. Sheppard had suffered a concussion of the brain. Referring to such a supposed concussion, appellant's counsel, on cross-examination, asked the witness: "You cannot say that he had," to which the witness replied: "I cannot say that he had, of course not." On later cross-examination, the witness stated that Mr. Sheppard's nervous state after the accident might have resulted from conditions other than a blow on the head, which, of course, is evidently true.

The record is absolutely silent as to the circumstances under which the deceased entered the water. This might have been the result of any one of several causes. To support the jury's verdict, it must first be

presumed that Mr. Sheppard, during the accident, received a blow on his head, and, second, that, as the proximate result of this blow, he in some manner entered the water and was drowned. This is basing presumption upon presumption.

Respondent relies upon the case of *Hepner v. Department of Labor & Industries,* 141 Wash. 55, 250 Pac. 461. In that case, it appeared that a workman was injured during the course of his employment, on account of which injury he was receiving compensation; that, later, the workman was killed by being struck by a train. There was evidence in the record which clearly indicated that, as a result of the original injury, the workman's mind had become affected, this court saying:

"The evidence was all but conclusive that decedent was insane; and, from the testimony given by medical experts, it was shown that his state of mind was that of a child."

This court summed up the evidence in the following paragraph:

"We think that all the circumstances shown by the evidence cannot reasonably support any other hypothesis than that the decedent met his death through wandering upon the railroad track, while in an insane condition; and that, therefore, the verdict of the jury is not based upon conjecture."

It was held that the record supported the jury's verdict in favor of the widow of the workman.

Respondent also cites the case of *Gatterdam v. Department of Labor & Industries,* 185 Wash. 628, 56 P. (2d) 693, in which a judgment entered upon a verdict of the jury in favor of the widow of a workman was also affirmed. In the case cited, the workman, having previously suffered an injury for which he was allowed time loss, went through a period of great suffering,

during which morphine was administered to him. While he was still suffering from the injury, one day his dead body was found in the bathroom of his home, with a bullet wound in his head and a revolver in his hand. It was beyond question that his death resulted from a self-inflicted wound. His widow, in contending that she was entitled to the benefit of the act, introduced evidence to the effect that the injury suffered by the deceased resulted in insanity which drove him to self-destruction, and that his death was not the result of a voluntary act. The record contained evidence to the effect that the deceased had frequently acted "in an irrational and irresponsible manner; that he had frequent lapses of memory and did things he was not conscious of doing." After stating the evidence and referring to the instructions given to the jury, this court said:

"These instructions clearly informed the jury of the facts to be found, necessary to a recovery by the respondent. In the light of these instructions, the jury must have found, and there is some evidence in the record warranting the finding, that Gatterdam took his own life as the result of an uncontrollable impulse or while in the delirium caused by the pain he was suffering, and the diseased condition of his mind, all having their origin in the injury to his foot."

It was held that the evidence presented a question for the jury.

Neither case cited is controlling here. In each, there was positive evidence that the workman had suffered an injury; and that, as a result of such injury, his mind had become, to a considerable extent, deranged.

In the case at bar, respondent's contention that Mr. Sheppard suffered some physical injury is based upon pure speculation. It cannot be said that his physical condition after the accident, as described by the witnesses, shows more than the natural nervous reaction

from the danger he had gone through, leaving out of consideration any apprehension which Mr. Sheppard would naturally have as to the effect which the accident might have upon his employer's mind, Mr. Sheppard's tenure of his position being already somewhat in jeopardy. To argue that Mr. Sheppard had suffered a physical injury, and that as the result of such injury his mind had become deranged, is to indulge in pure speculation.

■ After this case was first argued and submitted to a department of this court, and on the day that the case was reargued to the court sitting *En Banc,* respondent interposed a motion to strike the statement of facts and to affirm the judgment. In support of this motion, respondent argues that it appears from the certificate of the trial judge attached to the statement of facts prepared by appellant that this statement of facts contains only a portion of the evidence and testimony introduced by the parties on the trial before the superior court. The certificate appears to be complete, and it is not obnoxious to the attack made thereon by respondent. The statement of facts clearly shows that, in presenting the evidence on the trial before the superior court, the departmental record was used. In its praecipe for a transcript on appeal, appellant instructed the clerk of the superior court to prepare a transcript containing, among other matters, the departmental record. This record, properly certified by the secretary of the department of labor and industries, is included in the record before us. It bears the file mark of the clerk of the superior court for King county showing that it was filed in his office prior to the date the cause was called for trial before that court. In his certificate to the transcript on appeal, ordered by appellant, the county clerk certified that he had prepared the transcript as directed by appellant. The

statement of facts was seasonably filed in the office of the clerk of the superior court, and in due time was certified by the judge before whom the case was tried and forwarded to this court as a portion of the record on appeal.

In support of respondent's motion to strike the statement of facts, her counsel argue that, as the departmental record used on the trial below was not by the court directly made a part of the statement of facts, it should be held that the statement is incomplete and should be stricken. Counsel for respondent cite three of our decisions in support of their motion. In the case of *Simmons v. Department of Labor & Industries,* 175 Wash. 290, 27 P. (2d) 567, it appeared that neither statement of facts nor bill of exceptions had been certified or filed. This court stated that, as the presumption is that the court acted upon sufficient evidence, "without a statement of facts, properly certified, we are unable to say upon what evidence the court based its findings," and that the only question left was whether the findings and conclusions supported the judgment. This opinion does not support respondent's argument.

In the later case of *Strmich v. Department of Labor & Industries,* 186 Wash. 649, 59 P. (2d) 372, the certificate to the purported statement of facts stated affirmatively that the same did "not contain any of the evidence offered on behalf of the plaintiff." The certificate was clearly defective, and it was properly held that, on appeal, this court must assume that the findings were warranted by the evidence received by the trial court. It is noted in the opinion that the departmental record was not embodied in the statement of facts, but the certificate attached to the statement was in and of itself clearly defective.

In the case of *Daugherty v. Department of Labor &*

*Industries,* 188 Wash. 626, 63 P. (2d) 434, this court, sitting *En Banc,* affirmed a judgment of the superior court awarding the plaintiff a widow's pension, to be paid by the department of labor and industries. The question raised by the respondent's motion to strike is not referred to in the opinion of the court, which was signed by six judges, two other judges dissenting. One judge concurred in the result reached by the majority, stating in his concurring opinion that the departmental record was not by reference made a part of the statement of facts, nor was it certified by the trial court as such. The concurring judge further stated that, as the statement of facts as signed and certified disclosed that it did not contain all the evidence, this court for that reason could not consider on appeal any questions of fact. In the case last cited, the court in its opinion did consider questions of fact and affirmed the judgment of the superior court on the merits. If the opinion of this court in the case last cited has any bearing upon the question now under discussion, it is an authority against respondent's position. None of the opinions in the cases relied on by respondent is here controlling.

By Rem. Rev. Stat., § 7697 [P. C. § 3488], it is provided that, when an appeal to the superior court is taken from a decision of the joint board, the department shall serve upon the appellant and file with the clerk of the court before the case is called for trial a certified copy of its complete record on the claim, "which shall, upon being so filed, become a part of the record in such case."

In the recent case of *Hunter v. Department of Labor & Industries,* 190 Wash. 380, 68 P. (2d) 224, this court, sitting *En Banc,* referring to a motion of import similar to that now under discussion (three judges dissenting), said:

"It is thus apparent that a bill of exceptions or statement of facts is but a part of the record, and that it is unnecessary to incorporate therein that which is itself already a part of the record. The departmental record herein being, by statute, a part of the record in the case, it was unnecessary to include it in the statement of facts, which likewise is only a part of the record. The motion to strike the departmental record from the record on appeal is, therefore, denied."

In the case at bar, the statement of facts was seasonably filed and properly certified, and is before us for consideration. Under the authority of the case last cited, the departmental record is also properly before us for consideration. Respondent's motion to strike the statement of facts is therefore denied.

We find in the record before us no evidence which supports the verdict of the jury in respondent's favor, nor do we find in the record any evidence from which the trier of the facts might draw any legal inference sufficient to support the verdict rendered.

Appellant argues that the trial court improperly submitted to a jury the questions of fact to be determined. Our opinion on the merits of this case renders unnecessary discussion of the questions raised by appellant's argument upon the phase of the case just referred to. Upon the question of the duty of the trial court to submit the questions at issue to a jury on respondent's demand, and as to the weight to be given by the court to the findings of a jury in a case in which the department of labor and industries is defendant, we express no opinion.

The judgment appealed from is accordingly reversed, with directions to the trial court to dismiss the action.

STEINERT, C. J., MAIN, MILLARD, BLAKE, GERAGHTY, ROBINSON, and TOLMAN, JJ., concur.

Holcomb, J. (dissenting)—Contrary to the decision of the majority, there was amply sufficient evidence and inferences from facts shown in the record in this case to submit the facts to a jury.

The decision in *Hunter v. Department of Labor & Industries*, 190 Wash. 380, 68 P. (2d) 224, was not correct and should be overruled at the earliest possible opportunity before it becomes an established rule of procedure.

The judgment in this case should be affirmed. I therefore dissent.

