720

SCHAFER BROS. LOGGING COMPANY, *Appellant*, v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent.*[1]

[1]Reported in 104 P. (2d) 747.

*Lenihan & Ivers,* for appellant.

*The Attorney General* and *T. H. Little, Assistant* (*Harry Ellsworth Foster,* of counsel), for respondent.

SIMPSON, J.—This appeal involves an order made by the department of labor and industries in which allowance was made for funeral expenses and a $4,500 death loss charged against the cost experience of appellant.

September 7, 1937, Carl Strom, a sawmill employee of appellant, quit work and reported to Dr. M. W. Brachvogel for treatment of rheumatism in his left knee. After an examination of Mr. Strom, Dr. Brachvogel decided that the cause of the rheumatism was infected tonsils, and performed a tonsillectomy September 10, 1937. At Strom's request, the doctor made application to the Aetna Insurance Company for sick benefits of ten dollars per week under the terms of the group health insurance policy held by Strom.

Subsequent to the operation, Strom again complained of rheumatism, and September 21, 1937, his left leg was X-rayed, which disclosed, as reported by Dr. Brachvogel, "X-rays of left femur revealed old involvement of the bone." The patient's leg was then placed in a plaster cast. September 30, 1937, a diagnosis was made. October 2, 1937, a gutter operation was performed and a diseased portion of the bone of the upper left leg was removed.

During the month of October, 1937, a committee of Strom's fellow employees visited him, and feeling that he should receive more assistance than supplied by the insurance company, suggested that a claim for compensation be made to the department of labor and industries on account of injuries suffered March 15th and the latter part of July, 1937.

Accordingly, November 4, 1937, a claim for compensation was filed with the department. The claim was

allowed and payments for time loss made in the total sum of $175. In the meantime, Strom's condition became worse, and, after a consultation with Dr. H. T. Buckner of Seattle, Dr. Brachvogel performed a second gutter operation on February 4, 1938. March 7, 1938, Strom died while the dressings on his leg were being changed.

March 16, 1938, the supervisor of the department entered an order terminating the time loss as of February 8, 1938. March 28, 1938, the supervisor entered an order for the funeral expenses, and charged appellant's cost experience account with a death loss of $4,500, under the provisions of Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471].

Application for a rehearing before the joint board was filed by appellant with the department May 17, 1938. The petition was granted. After a hearing before an examiner, the joint board sustained the order of the supervisor. Appellant then appealed to the superior court. That court entered judgment affirming the order of the joint board.

In its appeal to this court, appellant makes the following assignments of error: First, that the trial court erred in entering its conclusion of law which stated "that the employer had statutory notice of the allowance of the claim by the department, from which no appeal was taken;" second, that it erred in holding that the order of the joint board was correct.

It is admitted that Strom worked steadily during the year 1937 until September 7, 1937.

The findings of the joint board recited:

"After review and consideration of the entire record, facts and testimony, the Joint Board concludes that the Statute of Limitations has operated against the employer's attempted appeal for the reason that the employer was notified of the allowance of the claim and made no protest within sixty days as provided by Sec-

tion 7697; that having acknowledged the responsibility of the Department for the claim cannot now escape its consequences. That further and without waiving the above, that the petitioner has failed by preponderance to complete the testimony, establish or maintain a burden of proof sufficient to overcome the statutory presumption of correctness of the Supervisor's action concerning the claim. That the record submitted by the petitioner acknowledges that the claimant's condition was possibly aggravated by the injuries received and for which the Department has acknowledged liability and for which condition the claimant was paid during his lifetime and until his death. That the Supervisor's action was correct and should be sustained."

The order of the board was as follows:

"IT IS HEREBY ORDERED That the Supervisor's action be and hereby is sustained for the reason that the Statute of Limitations has operated against challenge of allowance *of allowance* of the claim; and further without waiving the above that the Supervisor's action concerning the claim was correct."

Respondent contends that the time loss award is *res judicata* of the issues involved in the present action, and that the failure of appellant to appeal from that award estops it from contesting the allowance for the funeral and the charge against its cost experience.

Appellant·urges that the time loss award and the death claim are separate and distinct claims and that they have no relation to each other; therefore, that the allowance for time loss is not *res judicata* of the death claim.

The question presented has been set at rest by our holding in *Miller v. Department of Labor & Industries,* 1 Wn. (2d) 478, 96 P. (2d) 579. In that case, Woodson Miller, husband of claimant, was injured while engaged in extrahazardous employment and filed a claim for time loss. The supervisor rejected his claim, and

he appealed to the joint board. He died while his appeal was pending, and his widow was substituted as claimant. The claim for time loss was allowed as the result of a verdict of a jury, and no appeal was taken. While the former cause was pending, the widow filed a claim for pension, which was rejected by the department. Appeals to the superior court and to this court resulted in a denial of the widow's claim. In deciding the case we stated:

"However, the appellant says that the judgment entered upon the verdict of the jury, directing the department to find the amount of the time loss and pay the same, which was not appealed from, is *res judicata* in this case. This contention is without foundation in law, because the widow's claim is entirely different from the claim for time loss, and the parties are not the same. In this case, Mrs. Miller was a claimant for the widow's pension; in the other, the husband was the claimant for time loss."

We conclude that in the present case the allowance for time loss had no relation to the order charging appellant's cost experience with the death loss; that they were separate and distinct claims; and that the allowance for time loss did not estop the appellant from contesting the charge subsequently made.

Any other holding would be disastrous to employers and employees. If an employer was estopped to contest a death award because he had not prosecuted an appeal from a time loss allowance, he would, in order to protect himself, be compelled to litigate every claim presented for time loss, which would result in endless trials at a cost prohibitive to the employer and employee alike.

The next question pressed upon us is whether there is sufficient proof to support a finding that Strom's death resulted from injuries sustained while he was working in appellant's sawmill.

At the time Strom's fellow workmen prevailed upon him to file a claim for time loss with the department, they filed their affidavits in support of the claim, all of which stated that Strom received an injury to his left leg. These men also appeared as witnesses in the hearing before the examiner for the joint board. From their testimony, it appears that they failed to state that Strom's left leg had been injured. The testimony concerning the location of the injuries to Strom were either based upon statements made to them or upon their conclusion that the left leg was injured because it was afterwards operated upon. One witness testified that the right leg was injured, but changed his testimony and stated it was the left leg when he had been shown the affidavit he had presented to the department at the time the claim for time loss was made.

The evidence upon which the supervisor and the joint board based their conclusions was, at best, conjectural and speculative, and it is not sufficient upon which to base a decision that the injury from which Strom died was caused by the accidents occurring at the mill. *Sheppard v. Department of Labor & Industries,* 191 Wash. 80, 70 P. (2d) 792.

Another reason for holding that Strom's death did not result from the injuries he received while working for appellant is the affirmative showing made by Dr. Brachvogel that the injuries did not cause the death of Mr. Strom. Dr. Brachvogel was the only physician called to testify. The following excerpts from his testimony clearly illustrate the point:

"Q. Doctor, when you performed the operation did you find the actual existence of the osteomyelitis in the bone? A. Yes and well advanced—chronic osteomyelitis. Q. Did that confirm or make you change your diagnosis that you had previously made as to the existence of the osteomyelitis condition? A. It did not change it at all. It corroborated it. Q. In your opinion,

Doctor, that dated back, did it, to where? A. I think that is a result of the old fracture that he had years before because the skin over the fracture was turned in and adherrent to the bone. There was not any subcutaneous tissue present at all. At the time he got his infection through there it turned it. . . . Q. Now, Doctor, in your Proof of Death statement which is now marked Exhibit E you state the following as the remote cause of death 'Chronic Supurating wound in the left thigh due to chronic osteomyelitis which became active on September 7th, 1937 and which had followed a compound fracture of the left femur about 1926 or 1927'—now when you refer to that compound fracture, that's the fracture you spoke of that he told you he had sustained several years before—that was somewhere between 1923, 4, 5 or 6? A. Yes, the boy was not sure when that happened. Q. I will ask you if, based on your examination and your treatment of Carl Strom and your observation of the x-rays that you had taken of him and your entire knowledge of his condition as he came under your attention from September 7th, 1937 up to the date of his death in March of 1938, that even if he had been injured during the year of 1937 while in the employ of Schafer Brothers Logging Company, that that injury had anything to do whatsoever with his death? A. I think not. . . . Q. If this man was hit in March or July, 1937 by a 2x6 which fell off the pile and hit him on the left leg in the region of the knee, could it not be possible for that to light up that condition? A. I now think that if it had done that, he would have had a manifestation of injury at that time and he would have complained of it and there would have been a sudden lighting up instead of a slow process. Q. How soon? A. In two or three weeks time or at once."

We have many times had occasion to consider the importance of the expert testimony of physicians in cases of this nature. Among the most recent of these decisions are *Eyer v. Department of Labor & Industries*, 1 Wn. (2d) 553, 96 P. (2d) 1115, and *LaLone v. Department of Labor & Industries*, 3 Wn. (2d) 191,

100 P. (2d) 26. In the *Eyer* opinion, after collecting other cases upon this question, we said:

"In determining whether the existing physical condition of a claimant is attributable to a preexisting disease or congenital infirmity, a finding of fact based upon the testimony of skilled and professional men, when reasonably supported, will not be disturbed."

The very nature of the problems presented in this and kindred cases demand that reliance be placed upon the testimony of men skilled in the sciences.

The doctor's testimony, and there was none opposed to it, demonstrated that the death was caused not by the injuries received during the summer of 1937, but resulted solely from an injury suffered many years before, prior to the time Strom was employed by appellant.

We conclude that there was no basis for the holding of the supervisor and of the joint board as affirmed by the superior court.

One more question, however, deserves our attention. In arriving at this conclusion, we have not been unmindful of the following provision of Rem. Rev. Stat., § 7697 [P. C. § 3488]:

"In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same. . . ."

Plainly, this provision was intended to be applicable to workmen's compensation proceedings on appeals to the superior court and in this court. The benefit accruing to respondent from its application in our consideration of the case is readily apparent.

On the other hand, examination of its context (§ 7697, *supra*), and of the unambiguous language of the provision itself has convinced us that its application was intended by the legislature only after the pro-

ceedings reached the superior court, that it was not contemplated that the presumption should attach also to the order of the supervisor in proceedings before the joint board.

That the joint board in the case at bar labored under a misapprehension in this respect, is made evident by the following excerpt from its findings:

" . . . that the petitioner has failed by preponderance to complete the testimony, establish or maintain a burden of proof sufficient to overcome the statutory presumption of correctness of the Supervisor's action concerning the claim."

It being apparent that the joint board, in ruling upon a factual question, misconceived a rule of law, it might be argued that, because its order would, for this reason, no longer be entitled to the benefit of the presumption in this court, the proceedings should be remanded to the joint board with instructions to enter its order upon correct legal principles. This might well be a proper disposition of the case if reversal of the order of the joint board turned upon the question of whether or not the department was here entitled to benefit by application of the presumption. In the case at bar, however, we have concluded that, even though respondent be allowed the benefit of the presumption, its holding cannot be sustained. For this reason, it would serve no useful purpose to remand the case for reconsideration by the joint board.

The judgment is, therefore, reversed.

BEALS, MILLARD, and ROBINSON, JJ., concur.

BLAKE, C. J., concurs in the result.