[No. 28535. Department One. May 23, 1942.]

MARTHA C. GUILES, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 126 P. (2d) 195.

The Attorney General, Edward S. Franklin, Harry L. Parr, and Roy A. Huse, Assistants, for appellant.

Ray W. DeKraay, for respondent.

ROBINSON, C. J.—This is a proceeding for compensation by the widow of a deceased workman. The supervisor denied the claim and was sustained by order of the joint board. The superior court reversed the order. The question for determination is whether or not the evidence supports the judgment of the superior court.

The evidence consists of the claim file of the department and testimony submitted by claimant at hearings conducted by examiners of the joint board. The department introduced no testimony.

The deceased had been an employee of Mumby Lumber & Shingle Company for several years. He was a man fifty years of age and apparently in good physical health. He had consulted the company's physician on two or three occasions over a period of several years, but apparently no one was aware of the fact that he was suffering from an organic disease.

On May 17 and 18, 1936, he was engaged in installing plumbing in cabins owned by the company and which housed its employees at Malone. On May 18th, while engaged in this work, he collapsed. He was taken to the Conway Hospital at Elma in a state of extreme shock and in a semicomatose condition, and died three days later.

On May 22, 1936, an autopsy was performed by three physicians, one of whom was Dr. Leavitt, a medical examiner for the department. The autopsy report of Dr. Leavitt is as follows:

"The history of this case reveals that the man was working, and supposed to have been feeling well for a period of at least two months before the recent attack. There was no history of injury. According to his attending physician, Dr. F. A. Gianelli, he was working Monday and had been doing some lifting while laying pipe, but had no complaint. About two o'clock on Tuesday afternoon, the workman asked the foreman if he could lie down; he did not feel well. He was brought to Dr. Gianelli at four o'clock on Tuesday. He was in marked shock, and looked as though he would die. His condition was such that they were afraid to move him to Olympia where friends of the family wished to take him. It was noted that all the veins were collapsed, and he seemed to be suffering from rather marked air hunger. It was stated that at the onset of his trouble he complained of pain in the left chest, but about half an hour after that time he did not complain of this pain.

"Examination of the abdomen at that time revealed that it was rather flaccid; no masses felt according to Dr. Gianelli; no localized tenderness, and his condition remained about the same. He did not recover from his shock and was semi-comatose in spite of supportive treatment. Without any apparent change, he died at 7:20 p. m., May 21st, 1936.

"The above history was secured from Mr. Gregor and the attending physician. In addition to this some past history was obtained from Dr. Foote of Elma. It was rather vague, but apparently this man two years

ago suffered from fainting spells, and at one time also had an abdominal complaint and was placed on a diet. Apparently he has been feeling fine for the last few months.

"Examination today reveals a slender, moderately well-nourished adult male; appears to be about fifty years of age; he is about 5 ft. 10 or 11 inches in height and weighs about 170 lbs. There was no external evidence of trauma. Body heat is absent. The abdomen was exposed through a mid line incision from the ensiform to the symphysis. Subcutaneous tissues were of normal appearance. The peritoneum was smooth and shining. There was no excess peritoneal fluid, and the fluid that was present was of normal appearance. There was no evidence of perforation of the small or large bowel. It was noted that the transverse and upper 2/3 of the descending colon was collapsed to about the size of a finger; beyond this point it was relatively dilated. There was no obstruction noted beyond the dilated portion of the bowel. On exploring the upper right quadrant, discoloration was noted near the first portion of the duodenum. This was brownish, and appeared to be stained by bile. Upon further exploration of this area, when the head of the pancreas was dissected, free blood was encountered, bright red in color. Pancreatic tissue was injected. Capsule of this portion of the pancreas was bound by fibrinous adhesions. Blood had diffused through the pancreatic tissue disturbing the entire pathology of the area of the pancreas. The tail of the pancreas was of normal appearance. Further exploration of the stomach revealed no ulcers, and no perforations. The spleen was relatively small, and the capsule appeared thickened. Kidneys reveal no noteworthy pathology, but in left kidney there is a small urinary retention cyst. Liver and gall bladder negative to examination. No further examination was made.

"Pathological diagnosis: acute hemorrhagic pancreatitis."

The reports of the other physicians were substantially to the same effect.

Claimant testified that, when deceased came home the evening of May 17, 1936, he complained of being very tired and stated to her, in the presence of their two sons, Orville, age twenty-six years, and Chester, age twenty-four, that he had been working under one of the cabins owned by the company known as the Busby house, and that, in lifting and pulling on a twenty-foot section of two and one-half inch pipe, he strained and twisted himself. She also testified that the next morning deceased was not feeling well and she tried to persuade him not to work that day. The two sons corroborated claimant in her testimony regarding the statements made by deceased. One of them testified that he examined the place where deceased had been working underneath the Busby house and that there was a twenty-foot section of two and one-half inch soil pipe extending from the bathroom to the septic tank. He also testified that the space underneath the house was very restricted for one to work in, the distance from the ground to the floor being from twelve to fourteen inches.

Claimant called Dr. Leavitt, who testified regarding the autopsy examination made by the physicians. He gave it as his opinion that death was caused by acute hemorrhagic pancreatitis. No medical testimony was introduced to show that an attack of acute pancreatitis could or could not have been brought on by overexertion or work of the nature of that in which deceased had been engaged, or that the work in which deceased had been engaged could or could not have contributed to the accident. Dr. Leavitt also testified that no examination was made of the chest or brain of the deceased.

Neither claimant, the department, nor the employer, who was represented at the hearings by its attorney,

introduced any testimony as to the precise work or activity deceased was engaged in at the time he was overcome. Apparently, there were no eyewitnesses to the accident. The employer's report of the accident, which was signed August 3, 1936, merely described the accident as follows:

"Became sick while at work on plumbing in house No. 44, walked to house No. 20 where he laid down. He was taken from there directly to the hospital."

Appellant contends that respondent has failed to sustain the burden of proving, by a preponderance of the evidence, that deceased sustained an injury in the course of his employment, which contributed to his death. It is contended that, on the record, an inference that death was caused solely by disease is just as reasonable as an inference that death was caused by disease and the work in which he was engaged.

We are mindful of the rule that the burden rests on claimant to prove every element of his claim by a preponderance of the evidence, and that, if the evidence is equally balanced, or if an inference that death was caused solely by disease is just as reasonable as an inference that it was caused by disease and overexertion by the employee in connection with his employment, there can be no recovery. *Cole v. Dept. of Labor & Industries,* 200 Wash. 296, 93 P. (2d) 413; *McCormick Lbr. Co. v. Dept. of Labor & Industries,* 7 Wn. (2d) 40, 45, 108 P. (2d) 807; *Hoff v. Dept. of Labor & Industries,* 198 Wash. 257, 266, 88 P. (2d) 419; *Ginsberg v. Burroughs Adding Mach. Co.,* 204 Mich. 130, 170 N. W. 15; *Spring Canyon Coal Co. v. Industrial Commission,* 58 Utah 608, 201 Pac. 173; and that an award must rest upon something more than mere surmise and conjecture. *Sheppard v. Dept. of Labor & Industries,* 191 Wash. 80, 70 P. (2d) 792; *Schafer Bros. Logging Co. v. Dept. of Labor & Indus-*

*tries,* 4 Wn. (2d) 720, 104 P. (2d) 747; *Liquid Carbonic Co. v. Industrial Commission,* 352 Ill. 405, 186 N. E. 140, 143, 87 A. L. R. 770; *Lawrence Leather Co. v. Barnhill,* 249 Ky. 437, 61 S. W. (2d) 1.

We are committed to the rule that:

"An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, *whatever the degree of exertion or the condition of the workman's health."* *McCormick Lbr. Co. v. Dept of Labor & Industries, supra.*

See, also, *Bergagna v. Dept. of Labor & Industries,* 199 Wash. 263, 267, 91 P. (2d) 551; *Barnes v. Dept of Labor & Industries,* 6 Wn. (2d) 155, 106 P. (2d) 1069; *Northwest Metal Products, Inc. v. Dept. of Labor & Industries,* 12 Wn. (2d) 155, 120 P. (2d) 855.

This is the rule that prevails in a great many of the jurisdictions having compensation acts similar to our own. *Fenton v. Thorley & Co.,* [1903] A. C. 443; *Clover, Clayton & Co. v. Hughes,* [1910] A. C. 242; *Falmouth Docks & Engineering Co. v. Treloar,* [1933] A. C. 481; *Partridge Jones & John Paton, Ltd. v. James,* [1933] A. C. 501; *In re Madden,* 222 Mass. 487, 111 N. E. 379; *Gilliland v. Ash Grove Lime Etc. Co.,* 104 Kan. 771, 180 Pac. 793; *Patrick v. J. B. Ham Co.,* 119 Me. 510, 111 Atl. 912, 13 A. L. R. 427; *Brown's Case,* 123 Me. 424, 123 Atl. 421, 60 A. L. R. 1293; *Guyon v. Swift & Co.,* 229 Iowa 625, 295 N. W. 185; *Lumbermen's Mut. Cas. Co. v. Griggs,* 190 Ga. 277, 9 S. E. (2d) 84; *Buckley v. Roche,* 214 Cal. 241, 4 P. (2d) 929; *In re Scrogham,* 52 Wyo. 232, 73 P. (2d) 300; *Stevenson v. Lee Moor Contracting Co.,* 45 N. M. 354, 115 P. (2d) 342; *Manning v. Pomerene,* 101 Neb. 127, 162 N. W. 492; *Columbia Steel Co. v. Industrial Commission,* 92 Utah 72, 66 P. (2d) 124; *Johnson v. La Bolt Oil Co.,* 62 S. D. 391, 252

N. W. 869; *Tennessee Eastman Corp. v. Russell,* 150 Tenn. 331, 265 S. W. 540.

The question is, did the work the deceased was engaged in at the time contribute to the injury, or, in the oft-quoted language of Lord Chancellor Loreburn in *Clover, Clayton & Co. v. Hughes,* [1910] A. C. 242:

"Looking at it broadly . . . and free from overnice conjectures, was it the disease that did it, or did the work he was doing help in any material degree?"

That deceased was engaged in arduous work there can be no doubt. Claimant testified that, on the day previous to his collapse, he had been engaged in lifting and pulling on a twenty foot section of a two and one-half inch pipe. There is no evidence to the contrary, and it was possible for the department to have proved the contrary had such not been the case. Claimant also testified that deceased complained to her of having strained and twisted himself while lifting and pulling on this section of pipe. While testimony of this kind is very unreliable, being easy to manufacture and hard to refute, we have held that, in compensation cases, it is admissible, and, when consistent with other evidence in the case, is entitled to some probative effect. *McKinnie v. Dept. of Labor & Industries,* 179 Wash. 245, 37 P. (2d) 218; *Devlin v. Dept. of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952. See, also, *Standard Oil Co. v. Mealey,* 147 Md. 249, 127 Atl. 850; *Spence v. Bethlehem Steel Co.,* 173 Md. 539, 197 Atl. 302; *Parker v. Farmers Union Mut. Ins. Co.,* 146 Kan. 832, 73 P. (2d) 1032; *Columbia Steel Co. v. Industrial Commission,* 92 Utah 72, 66 P. (2d) 124. Compare *Ginsberg v. Burroughs Adding Mach. Co.,* 204 Mich. 130, 170 N. W. 15; *H. C. Lallier Const. & Engineering Co. v. Industrial Commission,* 91 Colo. 593, 17 P. (2d) 532.

■ The fact of injury in the course of employment may be proved by circumstances as well as by direct testimony. *Demastes v. State Compensation Commissioner*, 112 W. Va. 498, 165 S. E. 667; *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 Atl. 192. It is not essential that there should be eyewitnesses to the accident, or that the accident should be evidenced by external marks or wounds. *Demastes v. State Compensation Commissioner, supra.*

■ The claimant was not obligated to establish her case beyond a reasonable doubt. It was requisite for her to make it appear more probable that her husband's death was caused by a strain or by a combination of a strain and disease than by disease alone. *Frescoln v. Puget Sound Traction, L. & P. Co.*, 90 Wash. 59, 155 Pac. 395; *Thomas v. Inland Motor Freight*, 190 Wash. 428, 68 P. (2d) 603; *McLaren v. Dept. of Labor & Industries*, 6 Wn. (2d) 164, 107 P. (2d) 230; *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606. See, also, *Ohio Bldg. Safety Vault Co. v. Industrial Board*, 277 Ill. 96, 115 N. E. 149.

■ Viewing all of the evidence in the case and the justifiable inferences to be drawn therefrom, we think the court reached the correct conclusion that the exertion put forward by deceased in lifting and pulling on the twenty foot section of the two and one-half inch pipe and the work he was doing in the restricted area underneath the Busby house was too much for him in his then weakened condition and brought about, or contributed to, his collapse the following day. His death, therefore, was the result of an injury received by him in the course of his employment, and his widow is entitled to a pension.

The judgment of the trial court is affirmed.

MAIN, STEINERT, MILLARD, and DRIVER, JJ., concur.