[No. 21474. Department One. November 15, 1928.]

ALEC KNIPPLE, *Respondent,* v. DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 271 Pac. 880.

*The Attorney General* and *Mark H. Wight, Assistant,* for appellants.

*Frank P. Christensen* and *Phil K. Eaton,* for respondent.

MITCHELL, J.—Alec Knipple, while engaged in extrahazardous work, was injured on December 22, 1925, suffering a fracture of the pelvis, a fracture of the right arm and a bruising and spraining of the back. Upon report to the state department of labor and industries, his claim was at once classified as temporary total disability. Thereafter he received monthly payments, reduced somewhat towards the last because he had resumed work of a kind less remunerative than his former occupation, until October 27, 1927, when the department terminated the monthly payments and closed the claim with a permanent partial disability rating and final award of three hundred dollars.

From this order the claimant made an application for rehearing before a joint board of the department of labor and industries, under the act of 1927, p. 850, § 8; Rem. 1927 Sup., § 7697, alleging that the final award was inadequate, and also asking for a further classification of temporary total disability.

Receiving no relief from the joint board, the claimant appealed to the superior court, where, upon a trial *de novo,* judgment was rendered reversing the order of the department and remanding the proceedings with directions that the claimant be compensated "adequately for the permanent partial disability to his back and to likewise compensate him by the payment of a permanent partial disability award for stricture of the urethra." The department has appealed.

The case as presented here is reduced to two questions; (1) adequacy of compensation for injuries to

the back, and (2) compensation for permanent partial disability on account of stricture of the urethra.

The question of the amount of such compensation is not one of fact, but of discretion, limited only by the maximum amount provided by statute, Rem. 1927 Sup., § 7697, where, as here, the injury is not specifically named and described in the schedule found in the statute, and we have often and uniformly held in such cases that an award by the department for an injury properly classified as permanent partial disability is not subject to review by the courts, except for arbitrary or capricious action on the part of the department. *Sinnes v. Daggett,* 80 Wash. 673, 142 Pac. 5; *Whipple v. Industrial Insurance Comm.,* 116 Wash. 341, 199 Pac. 455; *Sweitzer v. Industrial Insurance Comm.,* 116 Wash. 398, 199 Pac. 724; *Krause v. Industrial Insurance Comm.,* 119 Wash. 662, 206 Pac. 358; *Taylor v. Industrial Insurance Comm.,* 120 Wash. 4, 206 Pac. 973; *McMullin v. Department of Labor & Industries,* 120 Wash. 525, 207 Pac. 956.

In *Sweitzer v. Industrial Insurance Comm., supra,* in speaking of "arbitrary and capricious action" we said:

"These terms, when used in this connection, must mean wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached."

The record, as we understand it, shows that medical aid was to be furnished in this case under private contract, as provided by Rem. 1927 Sup., § 7724, and not chargeable to the medical aid fund of the department. Respondent was examined from time to time by the contract physician and also by the department's

own physician, both of whom made reports to the department, and in addition to those examinations he was examined from time to time, commencing March 27, 1927, and thence on to about the date of the final award, by seven or eight disinterested physicians, including specialists, all at considerable expense to the department. Two of these last named examinations were held, one by three physicians on or about June 7, 1927, and the other on October 21, 1927, by three other physicians. The reports are rather full and complete and generally in accord with each other. The report of October 21, 1927, signed by all three physicians, advised the department of a ten per cent permanent partial disability as "eminently fair to the claimant" for the purpose of the final award. Thereafter, prior to the appeal to the superior court, upon an understanding between the department and the claimant, still another examination was held at the expense of the department by three disinterested physicians, whose report was in all respects similar to the former ones. It was upon this attention and the examinations and reports prior to October 26, 1927, that the department fixed the degree of permanent partial disability and fixed the award.

As already stated, the only contention now is that the compensation was inadequate. In that respect the court can not interfere with the award, in the absence of a showing of arbitrary or capricious conduct on the part of the department, as those terms have already been defined. As we consider the record for that purpose, we find no substantial facts upon which to charge the department with that kind of conduct, but on the contrary it appears that the department was patient, considerate and reasonable.

It is our conclusion, further, that the judgment of the trial court directing a permanent partial

disability award for the stricture of the urethra must be reversed. The department held against the respondent, and the statute, Laws of 1927, p. 850, § 8; Rem. 1927 Sup., § 7697, provides:

"In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct, and the burden of proof shall be upon the party attacking the same."

To meet this burden the respondent called one physician, from whose testimony it appears that he was not a specialist or urinologist, as it was termed by some of the doctors; that he made no examination of the respondent until shortly after the appeal in this case to the superior court in January, 1928, which was made at the request of the respondent, and at which time the physician did not have a complete history of the case; that he had not attempted to make a full examination such as made by specialists in that line; that he examined him again during the trial of the case on April 25, 1928; and that, upon that information and the use at the trial of X-rays theretofore made by others and used while the claim was before the department, he was of the opinion that the stricture caused a permanent partial disability.

On the contrary it appears that, shortly after the accident occurred, the stricture was observed, at which time there were on file complete histories of the case and reports of physicians, all of which were turned over to a specialist in this line to assist in the personal examination of the respondent, which was made by the specialist and fully reported in writing to the department. This trouble was kept under observation thereafter and showed marked improvement, and finally, apparently at the request of the respondent, or at least with his consent, the department referred the case to the same specialist and two other specialists of the

same line, for a joint examination and report. With all the data pertaining to the case possessed by the department before them, the three specialists made an examination of the respondent which was reported to the department in writing and signed by all three. In their report they stated that there was a mild stricture "which may be controlled easily by sounds and irrigation"; and "it is our opinion that no permanent disability is present as a result of injury to the urinary tract." The specialist who first examined the respondent, and who served with the other two specialists in making the joint or final examination, again examined the respondent at the time of the trial, and testified at the trial. His testimony shows that he has practiced as a specialist in this line for twenty years. He gave a detailed account of his work in connection with the case, and said that the other two specialists who assisted him "are specialists in this same line and do nothing else." He further testified:

"Q. What can you say in this instant case as to whether or not that (stricture) will cause any disability or loss of time? A. No. Q. Any loss of functioning? A. No functional loss. Q. No functional loss at all? A. No."

As to further treatment necessary, he testified that it would be simple; that "twice a year would take care of it and possibly five minutes each time." The specialist, upon making the first examination, advised the respondent to get such treatments when necessary. In this respect it may be stated that the final award was made on October 26, 1927, and that there is no testimony in the record to show that thereafter, down to the date of the trial, April 25, 1928, the respondent had taken any such treatment or that there had been any necessity for such treatment.

Considering the kind of testimony upon which this

suit must be decided, the qualifications of the witnesses as specialists or otherwise, the character and number of examinations made by them, and the extent of the familiarity of the different witnesses with the injury, we are of the opinion that the evidence preponderates against the findings and conclusions of the trial court and that it is in accord with the findings and order of the department.

Reversed.

TOLMAN and BEALS, JJ., concur.

[1]Reported in 271 Pac. 886.