[No. 24200. Department Two. March 13, 1933.]

DOROTHY E. HIMES, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*John S. Lynch* and *Phil K. Eaton*, for appellant.

*The Attorney General* and *Harry Ellsworth Foster*, for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court of Lewis county affirming a decision of the department of labor and industries of Washington upon a claim alleged to be within the workmen's compensation act of this state. The cause was submitted to the court upon the records and files of the department and the testimony taken at the rehearing before the joint board thereof. No additional evidence was had before the court.

[1]Reported in 19 P. (2d) 933.

The facts, which are undisputed, are these: For a number of years prior to January 29, 1931, Vern Himes, now deceased, had been engaged in the trade or business of welding, first as an employee but in recent years as the owner and operator of his own shop. At the time of the occurrences hereinafter referred to, he operated a small welding plant in Centralia, employing one man as a helper. In his plant was an electric welder with its necessary equipment. As such owner and operator, he had previously submitted a pay roll to the respondent department, including therein coverage for himself under the act.

On January 29, 1931, Mr. Himes and his helper were brazing the casting of a donkey engine. In the usual process of this kind of work, the casting is first heated, and then its surface is treated with a flux to remove the oils and carbon; the welding is then performed by using brass subjected to a welding torch generating heat of about four thousand degrees Fahrenheit. In the process of welding, fine particles of zinc, in the form of zinc oxide, are thrown off, creating poisonous fumes, which, though invisible while afloat in the air, finally settle in the form of white sediment or dust. The operator who manipulates the torch is proximately exposed to these fumes, and, as a result, the fine particles of zinc oxide enter the nostrils and mouth, where they solidify upon contact with the mucous membrane, and are then carried into the stomach and intestines, where they have a tendency to set up gastro-intestinal disturbances.

According to the evidence, brass-founding may cause various forms of disease, such as gout, chronic nephritis, progressive paresis of the legs, tremor, muscular wasting and locomotor ataxia; it may also cause what is known as "brass-founder's ague," producing languor and depression, followed by prostra-

tion, sweats, chills, nausea and muscular pains. The symptoms are usually arrested by use of milk to cause vomiting, and by purgatives. Those engaged in the trade usually resort to these remedies for relief, and recovery usually follows within several hours or, at most, within several days.

Upon a number of prior occasions, Mr. Himes, while engaged in performing welding jobs, had suffered attacks of brass poisoning, but those attacks had readily yielded upon the administration of the usual remedies. His last attack, which was incurred upon the occasion above referred to, was, however, more serious, though at first it did not appear so. He did not immediately quit work, but later in the day he left his shop and went home. The next day, his condition became worse, and a doctor was summoned, who diagnosed the case as one of appendicitis. A consulting physician was then called, and upon examination by him, he arrived at the same conclusion. The patient was taken to a hospital and there operated on for appendicitis on January 31. He died on February 3. A post-mortem was afterwards performed, and the consulting physician concluded, from his examination and from his subsequent study of medical authorities, that death had been due to brass poisoning.

A claim was filed by the appellant, widow of the deceased, and was rejected by the department. The rejection of the claim was sustained upon a rehearing before the joint board. Upon appeal to the superior court, the order of the joint board was affirmed. An appeal was then taken to this court.

The trial court specifically found that there was no evidence to show whether such brass poisoning was the result of a single exposure, or whether it had developed from a constant exposure over a period of years; from this finding, the court concluded that the

appeal should be dismissed, for the reason that death was not the result of an injury as that term is defined in the workmen's compensation act.

The existing statute, to which the court referred, and which defines an injury under the workmen's compensation act, reads as follows:

"The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom." Rem. Rev. Stat., § 7675.

The department, upon its investigation of the claim, had concluded that it did not come within the statute. The physician who testified before the joint board admitted that he could not differentiate between an acute and a chronic case of brass poisoning, as that was the first case of its kind that had ever come under his observation. He further admitted that it was just a conjecture with him that death was due to brass poisoning at all; further, that he had been unable to make a satisfactory post-mortem examination. The deceased, himself, according to the physician's testimony, at first thought he had the "flu," and two physicians had diagnosed the case as appendicitis and had actually operated for that ailment.

In Rem. Rev. Stat., § 7697, it is provided:

"In all court proceedings under or pursuant to this act the decision of the department shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same."

We have uniformly upheld this section of the statute wherever it was deemed applicable. *Frich v. Department of Labor & Industries,* 169 Wash. 282, 13 P. (2d) 67, and cases cited therein.

We think that the statute is applicable here. If it be admitted that the cause of death was attributable

to brass poisoning, concerning which the evidence raises some question, at least, that evidence, in our opinion, did not preponderate to require a finding that the poisoning was an acute attack as opposed to a progressive and chronic case. The burden which rested upon the appellant has not been met as the statute requires, and she has, therefore, not made a case for relief under the act.

Upon the question whether an acute attack of brass poisoning, under the circumstances here shown, falls within the statutory definition of injury, or whether it is to be classified as an occupational disease, we express no opinion, inasmuch as our disposition of the case renders the determination of that question unnecessary.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.