[No. 25634. Department One. July 9, 1935.]

TONY STEVICH, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 47 P. (2d) 32.

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*J. Peter P. Healy,* for respondent.

Beals, J.—Tony Stevich was injured November 12, 1930, while engaged in extrahazardous employment and within the protection of the workmen's compensation act. In his report of the accident, he stated that a falling timber struck the right side of his ribs and his back. He was treated at a clinic which was under contract to care for the employees of the Pacific National Lumber Company, for which plaintiff was working; the medical report stating that plaintiff's sixth rib was fractured and that he was suffering from contusions.

The department recognized the claim and assumed the burden of paying time loss. It appears that the injured rib was displaced, as well as fractured, and one of the examining physicians recommended that the displacement should be corrected. A later report, dated June 1, 1931, indicated that a good union had taken place, although some misalignment persisted. At this time, the examining physician stated that, in his opinion, the claimant was able to return to work, that time loss should cease, and claimant be allowed two degrees permanent partial disability, based upon the deformity caused by the displacement.

December third following, after further examinations, claimant was operated on for the purpose of correcting the displaced rib, and at the same time the claim was reopened for the payment of time loss. During the month of February, 1932, after another examination, it was reported by one of the department's doctors that the incision made at the time of the operation was well healed, that claimant's condition was fixed, and that he was able to return to work. The al-

lowance of an additional eight degrees permanent partial disability was recommended. Following this report, under date February 4, 1932, the department entered an order closing the claim, with time loss to February third and an allowance of the additional eight degrees permanent partial disability.

During the months of April and May following, claimant consulted other physicians as to his condition. One of these submitted a report, stating it as his opinion that claimant had been allowed too little time loss. June 25, 1932, the department advised claimant that the claim would not be reopened and that the order of February fourth would stand. August 20, 1932, claimant applied for a reopening of his claim, which application, after further examination by a competent physician, was denied.

No further steps in connection with the matter were taken until July 26, 1933, when claimant again applied for a reopening of his claim and, upon denial of this application, appealed to the joint board. After a hearing, this body sustained the order of the supervisor refusing to open the claim, from which order claimant appealed to the superior court. The appeal was heard by the court, sitting with a jury, and from a judgment entered upon a verdict in claimant's favor, the department has appealed.

Error is assigned upon the denial of appellant's motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial; it being also contended that the judgment entered by the court is erroneous, in that it does not conform to the jury's verdict and grants respondent relief not warranted by the verdict or by the law.

Appellant acknowledges at the outset the rule recognized by this court in the case of *Stickney v.*

*Congdon*, 140 Wash. 670, 250 Pac. 32, in the following language:

"We have many times held that a judgment notwithstanding a verdict will be granted only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict."

Respondent's claim having been closed February 3, 1932, and no appeal having been taken either from this order or from the order denying his first petition for a reopening of the claim, which order bears date September 21, 1932, it is evident that respondent's second application for reopening the claim, dated July 26, 1933, presented only a claim for compensation based upon an aggravation of respondent's condition due to his injuries. Rem. Rev. Stat., § 7679 [P. C. § 3472], subd. (h). The court properly instructed the jury upon this question, telling them that, unless respondent's condition had grown worse or become aggravated since September 21, 1932, no basis existed for a verdict in his favor. No witnesses testified before the superior court, the matter being submitted to the court and jury upon the written record made before the department.

Respondent, testifying before the joint board, stated that he was then unable to work, and, in answer to the question propounded by his counsel: "Do you feel stronger than you did a long time ago?" he answered, "No, I feel worse and weaker." An acquaintance of respondent, who had known him for twenty-five years, testified before the board that, seven or eight years before, respondent was in much better physical condition than he was at the time of the hearing. This witness, however, did not testify that he had even seen respondent since 1930.

Respondent's testimony that he felt "worse and weaker" and his conclusion that he was unable to

work, giving all of his testimony the utmost possible weight, are entitled to slight consideration. As we stated in the case of *Kavaja v. Department of Labor and Industries,* 126 Wash. 284, 218 Pac. 196:

"While the testimony of appellant and other non-expert witnesses has some bearing on the question involved, yet, in the main, the actual facts must be determined from the testimony of the medical witnesses."

Two doctors were called on respondent's behalf. Doctor Nelson, who had examined respondent for the first time August 17, 1932, and again November 1, 1933, testified, referring to the second examination, that he found his condition then the same as at the time of the first examination. Doctor Nelson testified concerning his examination of some X-rays which had been taken of respondent, but we find nothing in this phase of his testimony which supports respondent's claim that his condition had become aggravated. Doctor Christian Quevli, Jr., testifying on respondent's behalf, stated that he had first examined respondent September 14, 1934. The doctor frankly stated that he could not testify concerning respondent's condition during the years 1932 and 1933.

Five physicians called by appellant testified that they had examined respondent at various times after his injury, and that his condition had not become aggravated since the closing of the claim.

Respondent argues that the trial court in its instructions improperly limited the jury to considering, in connection with respondent's claim that his condition had become aggravated, matters happening subsequent to September 21, 1932; respondent contending that he is entitled to relief if his condition had become aggravated after February 3, 1932, when his claim was closed, or, in any event, that he could show any change in his condition which took place after August 20,

1932, when he filed his first petition for reopening the claim. While admitting, of course, that no witnesses testified in person before the jury, counsel for respondent argues that, because respondent was present in court, the jury saw him, and for this reason could gain some information which would enable them to determine whether or not his condition had become aggravated since the closing of his claim.

It cannot be held that a jury may base a verdict upon the mere fact that they saw respondent, when he did not testify before them and was subject to no cross-examination. Such a ruling would place parties to litigation, tried, as was this, upon a record, to a considerable extent at the mercy of a designing party litigant, who could make what was possibly an entirely unwarranted appeal for sympathy, based upon an appearance which might be entirely simulated or pretended. No authority is cited for such a contention, and we cannot approve any such doctrine. It is, of course, also true that respondent is not entitled to recover herein simply because he may be now in a worse physical condition than he was when his claim was closed. To be entitled to relief in this proceeding, it was incumbent upon him to show that the condition caused by the injury had become aggravated.

Respondent assails the testimony of the doctors called by the department, arguing that they did not testify positively that respondent's condition had not become aggravated, but simply stated that, in their opinion, such was the case, or that they "thought" or "felt" that no such change had taken place. Respondent also argues that these doctors admitted that respondent had suffered some progressive deterioration in his physical condition and had lost strength and weight.

Had the doctors testified positively that respondent

was in the same physical condition at one time as he had been at another, their testimony would have been subject to criticism as being dogmatic on points which were properly matters of opinion and concerning which a careful physician would probably not testify positively.

Respondent argues that, because it appears that his weight materially decreased between the date of the injury and April, 1934, the jury were warranted in finding in his favor. In this connection, it is to be noted that the jury estimated respondent's disability at eighty degrees; seventy degrees being due to the accident and ten degrees to other causes.

We have made a careful study of the record in this case, paying particular attention to the testimony of the physicians called by respondent. We find in the record nothing which arises to the dignity of competent evidence to the effect that respondent's condition became aggravated after the closing of his claim, whether the deadline be fixed at February 3, 1932, or later, as set by the trial court. It is very evident that respondent was very persistent in demanding relief from the department. It is equally clear that the department afforded him every opportunity to maintain his contention that he was entitled to further relief, and gave his claim most careful consideration. While we are reluctant to interfere with the verdict of a jury, it must, in this case, be held that the verdict is without substantial support in the record, and that the trial court erred in not granting appellant's motion for judgment in its favor, as matter of law.

The judgment appealed from is accordingly reversed, with instructions to the trial court to dismiss the action.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.