[No. 27585.   *En Banc.*   December 2, 1939.]

W. F. Eyer, *Respondent,* v. The Department of Labor and Industries, *Appellant.*[1]

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*W. H. Sibbald,* for respondent.

Simpson, J.—Respondent sustained an injury August 24, 1935, while employed in extrahazardous employ-

[1] Reported in 96 P. (2d) 1115.

ment. The injury suffered was a wrenched back and torn ligaments of the left leg, caused when respondent's heel slipped from a worn step while he was walking down a flight of stairs in a dry kiln. He filed his claim for compensation with the department of labor and industries, and October 26, 1935, an allowance was made for time loss and temporary total disability to September 20, 1935. Shortly thereafter, respondent returned to work and continued his employment until May 15, 1937.

May 27, 1937, he made application to reopen his claim for the purpose of receiving further allowance for permanent partial disability, contending that his injury of August 24, 1935, had become so aggravated that he could no longer follow a gainful occupation. The supervisor of industrial insurance rejected the claim on June 9, 1937. June 17, 1937, respondent appealed to the joint board, which resulted in a hearing before that body. The joint board, April 4, 1938, sustained the order of the supervisor.

Respondent appealed to the superior court and, after hearing, obtained a judgment reversing the order of the joint board. The department of labor and industries appeals. The department contends that the court erred in reversing the joint board and in finding that respondent was entitled to a pension for total permanent disability.

The record discloses that respondent had worked steady since the autumn of 1935, except for two short periods, one when he took a trip east and another when he was ill with influenza. He testified that he did not suffer pain until his injury, and after that time the pain was almost continuous up until the time of the hearing.

The question for determination is whether or not his impaired physical condition was caused by his injury.

█ In approaching the problem, we must bear in mind that our statute, Rem. Rev. Stat., § 7697 [P. C. § 3488], provides:

" . . . In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same. . . ."

and that, when a complainant appeals to the courts, he assumes and must meet the burden of proving that he sustained an injury compensable under the statute. *Ferguson v. Department of Labor & Industries,* 197 Wash. 524, 85 P. (2d) 1072, 90 P. (2d) 280.

█ In determining whether the existing physical condition of a claimant is attributable to a preexisting disease or congenital infirmity, a finding of fact based upon the testimony of skilled and professional men, when reasonably supported, will not be disturbed.

In *Kavaja v. Department of Labor & Industries,* 126 Wash. 284, 218 Pac. 196, this court stated:

"While the testimony of appellant and other non-expert witnesses has some bearing on the question involved, yet, in the main, the actual facts must be determined from the testimony of the medical witnesses."

The supreme court of Oklahoma in *Fain Drilling Co. v. Deatherage,* 179 Okla. 409, 65 P. (2d) 1212, and *Atlantic Refining Co. v. Allen,* 90 P. (2d) (Okla.) 659, stated:

"Where, in a proceeding before the Industrial Commission, the disability alleged to exist is of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proved by the testimony of skilled professional persons, and a finding of fact based thereon when reasonably supported will not be disturbed."

See, also, *Stevich v. Department of Labor & Industries,* 182 Wash. 401, 47 P. (2d) 32; *McGrady v. Brink,* 195 Wash. 626, 81 P. (2d) 800; *Hoff v. Department of Labor & Industries,* 198 Wash. 257, 88 P. (2d) 419.

A commission consisting of Drs. C. J. Sells, J. L. Norris, and J. F. Christensen made a thorough examination of respondent June 22, 1937, and later testified at the hearing before the joint board. Their testimony is as contained in their written findings as follows:

"Only complaint is pain in lumbar region of back when bending or on pressure over 2nd & 3rd vertebrae. Looks well nourished. Weight 164 lbs. without coat. Height 67½ inches. Posture—Stooping. Shoulder blades prominent, slight scoliosis to left in lumbar region. A very marked lordosis, from 10th dorsal to 5th lumbar vertebrae. Walks with stiff (poker) back.

"Forward and backward bending normal. Can come within 4 inches of touching floor with finger tips on forward bending. Lateral movements of back and hip normal. Leg raising normal in every way. Reflexes are normal. Rhomberg negative. Co-ordination normal.

"Blood pressure abnormally high. S.182 D.90. Heart and lungs normal. Prostate normal. Urine negative.

"Wears a canvas belt 8 in. wide around hips but is very loose and apparently does no good.

"Is not under treatment.

"X-ray of dorsal and lumbar spine shows no evidence of injury. Marked scoliosis to left. Lateral view shows very pronounced forward curvature of all lumbar vertebrae. The surfaces between 4th & 5th lumbar vertebrae are irregular and rough, almost obliterating the normal space. Fifth lumbar vertebrae has a congenital defect evidently a spina bifida with foramen in body of same.

"Conclusion: There is a sacralization of 5th lumbar vertebrae and sacrum. There is a bony fusion of 10th, 11th and 12th dorsal and 1st lumbar vertebrae due to preexisting arthritis.

"His condition is fixed. No further treatment is indicated. There is no disability as a result of accident in question, it is due to pre-existing congenital and arthritic condition of the spine."

Dr. C. J. Sells, called as a witness on behalf of respondent, who had examined him on two occasions, testified:

"Well, it is my opinion that arthritis—we were talking strictly about arthritis—it is my opinion that arthritis isn't itself either improved or aggravated by an injury, but anyone who has arthritis is much more subject to so-called strains and pain as a result of having had this arthritis. In other words, a man who has arthritis, hypertrophic arthritis, as this man has, it is nearly always due to a focal infection some place in their body, causing a throwing out of spurring of bone and increased amount of calcium deposits into the tissue. Now, the accident didn't make any part of that. Also, he has a congenital deformity since birth and that congenital deformity since birth might be the cause, and probably is the cause, of the direct fusion of the 5th lumbar onto the sacrum; but a man who has that kind of a back may not be suffering much pain and some minor accident may produce pain, which is a long time in leaving, which may be weeks and may be several years before the pain from that particular injury clears up. But it isn't my opinion that the injury made the arthritis worse."

Counsel for respondent has not cited any case, but contents himself with the argument that the doctors were wrong in their conclusions. We are unable to accede to that conclusion. The physicians were very frank in the giving of their testimony and evidenced a desire to be entirely fair to respondent, and their testimony clearly indicated that respondent's existing physical condition was not occasioned by the injury.

The judgment is reversed.

MAIN, BEALS, MILLARD, STEINERT, GERAGHTY, ROBINSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—From the testimony of the department's physicians (*their expressed opinion to the contrary, notwithstanding*), I think the trial court was warranted in finding that the claimant's injury caused a latent arthritic condition to become active—resulting in total disability. Under the rule of *McGuire v. Department of Labor & Industries*, 179 Wash. 645, 38 P. (2d) 266, claimant is entitled to compensation.

I dissent.