[No. 28499. *En Banc.* January 6, 1942.]

NORTHWEST METAL PRODUCTS, INC., *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Appellants.*[1]

[1]Reported in 120 P. (2d) 855.

*The Attorney General* and *Edward S. Franklin, Assistant,* for appellant department of labor and industries.

*Maslan & Maslan,* for appellant Barlia.

*Grosscup, Morrow & Ambler,* for respondent.

BEALS, J.—During the year 1938, David Barlia was in the employ of Northwest Metal Products, Inc., a corporation engaged in business in the city of Seattle. February 23, 1939, Barlia filed with the department of labor and industries a claim in which he stated that, during the summer of 1938, and while in the employ of the company above named, he commenced to suffer from pain in the pit of his stomach, which pain he noticed after working several days at a pipe rolling machine. He further stated in his claim that he had overexerted himself while so working, and because of the continued pain which developed, he could not continue the work.

The department carefully investigated Barlia's claim, the result of its investigations indicating that Barlia had for some time been suffering from heart disease. Thereafter the supervisor, by order dated April 12, 1939, rejected the claim, for the reason that claimant's then condition preexisted his alleged injury, was not related thereto, and was not the result of an industrial injury nor embraced within the occupational diseases enumerated in the statute.

Barlia appealed to the joint board, before which claimant and several medical witnesses testified. The joint board then ordered that Barlia be examined by three physicians, who were recognized heart specialists. These physicians examined Barlia, and submitted to the joint board a lengthy report.

The corporation employer appeared before the joint board in opposition to the allowance of the claim, introducing medical and lay testimony. Thereafter the

joint board, by order dated October 7, 1940, reversed the action of the supervisor in rejecting the claim, and directed that the claim be allowed. The employer appealed to the superior court from the order of the joint board, and after a hearing, which was confined to a review of the departmental record, the court reversed the order of the joint board, and entered judgment accordingly, from which judgment the department and David Barlia have prosecuted separate appeals.

In this opinion, we shall refer to the corporation employer as respondent, to the department as appellant, and to Barlia by name. Barlia has filed no brief before this court, but has adopted as his the brief filed by appellant department.

Appellant assigns error upon the making of three findings of fact and three conclusions of law, as well as upon the entry of judgment reversing the order of the joint board and allowing respondent an attorney's fee. Error is also assigned upon the ruling of the trial court embodied in the judgment allowing respondent an attorney's fee, as well as fees of the witnesses called by respondent before the joint board.

Appellant's assignment of error upon the making of certain specified findings of fact and conclusions of law, and upon the entry of judgment reversing the order of the joint board may be considered together, as they present the question of the correctness of the ruling of the trial court to the effect that Barlia had sustained no industrial injury within the scope of the workmen's compensation act. In considering this phase of the case, it should be remembered that the order of the joint board is considered as *prima facie* correct, and that the burden of proof rests upon the party attacking the same. Rem. Rev. Stat., § 7697 [P. C. § 3488]. The effect to be given a ruling of the department was considered by this court in the recent case of *McLaren*

*v. Department of Labor & Industries,* 6 Wn. (2d) 164, 107 P. (2d) 230.

David Barlia was born in Turkey in 1908, coming to this country when five years of age. In 1921, while still in school, he had a severe attack of rheumatic fever, which incapacitated him for over two years. In 1928, he left school, and for the next four years worked in fruit orchards, in a trunk and bag factory, a furniture establishment, and a cleaning shop. In May, 1932, he was taken ill and treated at the King county hospital for a little over a month, as a sufferer from mitral heart disease. After his discharge from the hospital, and until June, 1938, he received occasional treatments as an out-patient, the record showing that he was treated ten times, receiving medicine containing digitalis. From 1934 to July, 1936, he was employed as a waiter and mess boy on ships plying between Seattle and Alaska. July 27, 1936, he entered the employment of Northwest Metal Products, Inc., the respondent in this action.

When Barlia entered respondent's employ, it appears that he had suffered little from his heart condition since 1932. Barlia married just prior to the time he commenced to work for respondent, his wife testifying that she had known him since 1932, and that, since her acquaintance with him and up to and including the time of their marriage, his physical condition appeared good. It appears that, during the period of his employment on shipboard, he received a good rating.

Respondent is engaged in the business of manufacturing a line of light metalware, including garbage cans, mail boxes, downspouts, sheet metal stoves, etc. An officer of respondent testified that Barlia was by them employed primarily on light jobs, generally as a helper, but that from time to time he was engaged in the operation of different machines located in the plant. It appears that, during July or August, 1938, Barlia

was put to work on a pipe rolling machine used for crimping metal, the machine requiring the exercise of hand pressure on a handle which operated the machine. After engaging in this work for several days, Barlia complained to the foreman that the work was too heavy for him, and was causing him considerable pain. After making this complaint, Barlia continued to operate the machine for about a week. Testifying before the department, Barlia stated that his trouble dated from this period, and although the pain left him after he had ceased operating the crimping machine, he remained in a weakened condition, and found any work difficult. He continued, however, to work until February 1, 1939, at which time he was working on a machine which, while not requiring the exercise of much effort, rendered quick movements necessary. He ceased work in February, 1939, and on the 23rd of that month filed his accident report.

In the recent case of *McCormick Lumber Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807, we reviewed in considerable detail our previous decisions bearing upon the subject of the workmen's compensation act and its relation to workmen afflicted with heart disease. In the course of the opinion, two important principles were stated, as follows:

"(1) That the provisions of the workmen's compensation act are not limited to such persons only as approximate physical perfection, and (2) that an accident arises out of a workman's employment within the meaning of that act when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of the workman's health."

After considering our prior decisions, the rule applicable to such cases was laid down as follows:

"It is true that, in practically all of the cases hereinbefore cited, there was some strain or effort beyond that ordinarily employed by the particular workman. However, the rule which this court has repeatedly and emphatically stated in those same decisions was not limited to those conditions. What this court has positively declared as its accepted rule, under both the original and the present definition of 'injury' is this: An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, *whatever the degree of exertion or the condition of the workman's health.*"

The questions presented in the case at bar concerning Barlia's physical condition for years prior to 1939 and since, must be determined upon the testimony of physicians who are experts in diseases and weaknesses of the heart. *Kavaja v. Department of Labor & Industries,* 126 Wash. 284, 218 Pac. 196; *Eyer v. Department of Labor & Industries,* 1 Wn. (2d) 553, 96 P. (2d) 1115; *Radich v. Department of Labor & Industries,* 10 Wn. (2d) 107, 115 P. (2d) 1022.

Six physicians testified before the joint board, two of whom were called by Barlia and four by respondent. The three physicians who were chosen by the joint board to examine Barlia, all of whom were well qualified to testify concerning Barlia's condition, and who did testify before the joint board, summed up their report on the case as follows:

"It is apparent that this man has had very little or no cardiac reserve since his original attack of rheumatic fever in 1921 and it is obvious that this man should not have been working for the preceding ten years at least. Work in general certainly contributed to his last cardiac breakdown and there is no doubt that the harder the work the more load on the heart. There is no history or evidence of trauma or actual strain in the sense of transmitted hydrostatic force."

The physicians who testified were men of learning, experts in their field, and were evidently conscien- tiously attempting, to the best of their ability, to advise the joint board. Naturally many of their answers were opinions upon matters concerning which the witnesses had no personal knowledge. One expert who was called both by Barlia and respondent, testifying for the latter, stated:

"Q. Doctor, from the history which I have just outlined, what in your judgment is the approximate cause of the present condition of Mr. Barlia? A. Of course, originally, it is rheumatic heart disease. Just how much damage his heart has suffered from recurrence of assumed attacks of rheumatic heart disease or other infections I could not state positively. I will state that the various occupations that he has undertaken have damaged his heart still more."

Later, on examination by Barlia's counsel, the following occurred:

"Q. (By Mr. A. L. Maslan) On the other hand, doctor, could you not say that this was the natural progress of an abnormal condition, induced and accentuated by work which was greater than this man's physical capacity to stand? A. If the work that he was doing at that time was beyond the capacity of his damaged heart, unquestionably it would do more harm."

Bearing in mind the provisions of Rem. Rev. Stat., § 7697, providing in part that

"In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same."

and under the rule laid down in the *McCormick* case and our previous decisions therein discussed, we hold that the record in the case at bar does not support the judgment of the trial court reversing the order of the joint board awarding Barlia compensation.

The judgment appealed from is therefore reversed, with instructions to enter judgment affirming the order of the joint board.

MAIN, MILLARD, STEINERT, BLAKE, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

ROBINSON, C. J. (concurring in the result)—I feel compelled to concur in the result reached in the foregoing opinion because of the decision of the court in *McCormick Lbr. Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807, but I am still firmly of the belief that the dissenting opinion in that case by Simpson, J., correctly construes the statute.

[1] Reported in 120 P. (2d) 841.