[No. 29636. Department One. November 2, 1945.]

BETTY BEILSER RAMBEAU, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 163 P. (2d) 133.

The *Attorney General*, *R. A. Moen*, *Assistant*, *Bogle*, *Bogle & Gates*, and *Edw. S. Franklin*, for appellants.

*Frank L. Cathersal*, for respondent.

SIMPSON, J.—Edward N. Rambeau contracted pneumonia while in the employ of the Todd-Pacific Shipyards and died therefrom on January 23, 1944. February 5, 1944, his widow, Betty Rambeau, filed with the department of labor and industries her claim for pension, giving the cause of her husband's death as virus pneumonia.

Dr. Lawrence McNerthney submitted proof of death, in which he stated that the immediate cause of death was "lobar pneumonia of virus type" and that the remote cause of death was:

"On June 15th the deceased was exposed to various gases and fumes in the tank of a ship and since that time has complained of pain in the chest."

March 31, 1944, the supervisor of industrial insurance rejected the claim on the ground that

"Death was not the result of occupational exposure or disease as contemplated by the Compensation Act, but was due solely and exclusively to an unrelated illness."

May 15, 1944, Mrs. Rambeau appealed to the joint board, which appeal resulted in a hearing before that body. The

joint board, October 23, 1944, sustained the order of the supervisor. The claimant then appealed to the superior court, where the cause was tried to a jury and resulted in a verdict, reversing the order of the joint board.

At the close of claimant's case, the department and the employer moved for a nonsuit. Later, motions for a directed verdict, for a judgment n. o. v., or for a new trial were made. The motions were denied. Judgment was entered upon the verdict, and this appeal followed.

The assignments of error are: denying appellant's motions for a nonsuit, for directed verdict, and for judgment n. o. v.; in denying the motion for a new trial; and in entering judgment in favor of respondent.

The hearing before the joint board presented the following testimony, which was submitted to the jury: From November, 1942, to June 15, 1943, Rambeau worked the second shift of eight hours in the bottom of ships being constructed at his employer's yards. His work consisted of drilling and setting of chalks. He used an air motor and machine hand tools. His work was "not hard work, everyday work." The customary way of furnishing air to the place where Rambeau worked was from a fan blower, which forced air from the top to the hatches. The used air was removed "through hose."

Henry L. Wold, safety foreman, testified that on June 15, 1943, the room in which Rambeau worked became filled with welding fumes and smoke. At his suggestion, the men left the room and went to the main deck. Mr. Wold stated that the men complained that they "didn't feel well." The temporary condition resulted from the removal of the blower. That condition, however, was shortly remedied, and the men went back to work. Mr. Wold also testified that there was always a certain amount of welding smoke going into the room where Rambeau worked. He stated that after June 15th, Rambeau had many lay offs, coughed, and complained that his chest hurt him.

Mrs. Rambeau testified that prior to June 15, 1943, her husband had been in good health and did not lose any time from work, but that subsequent to that date he coughed,

didn't feel well, lost weight, became "stoop-shouldered," and didn't eat much. Rambeau was in bed a considerable portion of the time in October, November, and December, 1943.

Dr. McNerthney, who had been the family physician for Mr. and Mrs. Rambeau, testified that there is a fever known as "metal fever," which results from the inhalation of metal fumes. He testified that Rambeau was in generally good health and had a good physical condition. Dr. McNerthney cared for Rambeau when he entered the hospital in 1943. The doctor was asked a hypothetical question, which included the entire history of the deceased as related by Mr. Wold and Mrs. Rambeau. The question concluded as follows:

"Was the accident a causative factor in increasing workman's susceptibility to the onset of virus pneumonia, so that he would more probably succumb thereto, than if the accident had not occurred?"

The answer was, "Probably was more, probably was." The doctor stated that he had not treated Rambeau for metal fever and, finally, the doctor stated:

"Q. Doctor, you said to the hypothetical question that there might be some connection between alleged inhalation of the metal fumes of June 15 and his death some seven months later on January 23, 1944? A. Yes. Q. Doctor, what was your surmise in that connection? . . . A. I gave 'more probably' because of the history in the hypothetical question, steady loss of weight, ability-inability to work and as his history stated may be susceptible to infection due to this exposure approximately six months previous to his death. Q. You say it may be? A. It more probably should. Q. But that, Doctor, is a matter of speculation? A. Matter of opinion. Q. Regardless of your opinion, factors of this case or patient, how would the facts shown in this matter appear to an expert? In other words, is it not reasonable, Doctor, that this man died from the result of pneumonia caused by a virus infection than that his death was caused by the alleged inhalation of fumes some several months before? A. That is reasonable. Q. In your report of March 1, 1944, you stated it was your opinion that the smoke could have possibly lowered this patient's resistance for this type

of infection, that is still your opinion? A. Yes. . . . Q. In regard to this connection of his death and accident of June 15th, 1943, by the words 'could possible' and 'more probably' and 'just reasonable' be one fact? A. Synonymous to me. Q. Synonymous to you? A. Yes. Q. From your examination of this particular case do you wish to add to the question that was propounded hypothetically a short while ago or let it stand? A. Let it stand."

The doctor did not treat Rambeau at any time prior to January 20, 1944, the day he entered the hospital.

Dr. C. R. McColl, a specialist in pathology, testified that he had performed a post-mortem examination on the deceased January 24, 1944, at the request of Dr. McNerthney. Dr. McColl was asked a hypothetical question quite like that propounded to Dr. McNerthney. His answer was as follows:

"Due to the fact that virus pneumonia is an infectious disease and because of the length of time between the alleged exposure and the onset of the disease I can see no relations between the alleged exposure and the virus disease that caused his death."

The verdict of the jury in cases of this nature has the same value as a verdict in ordinary law actions and will not be disturbed unless there is neither evidence, nor inference therefrom, to sustain it. Further, it is necessary to view the evidence on the standpoint most favorable to the party who has secured the verdict. *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973.

It must also be borne in mind that respondent in this case, by appealing from the adverse order of the joint board, assumed the burden of proof and of submitting to the jury sufficient substantial facts, as distinguished from a mere scintilla of evidence, to make a case for the jury. *Kravelich v. Department of Labor & Industries,* 23 Wn. (2d) 640, 161 P. (2d) 661. This is required in view of the provisions of Rem. Supp. 1943, § 7697 [P. P. C. § 704-1], which are as follows:

"If the Court shall determine that the Department has acted within its power and has correctly construed the law

and found the facts, the decision of the Department shall be confirmed; otherwise, it shall be reversed or modified. . . .

"In all court proceedings under or pursuant to this act the decision of the Department shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same."

■ The actual facts in cases of this nature must be determined from the testimony of medical men, though, of course, in some cases the testimony of lay witnesses has a material bearing upon the question involved. *Kavaja v. Department of Labor & Industries*, 126 Wash. 284, 218 Pac. 196; *Knipple v. Department of Labor & Industries*, 149 Wash. 594, 271 Pac. 880; *Stevich v. Department of Labor & Industries*, 182 Wash. 401, 47 P. (2d) 32; *Matson v. Department of Labor & Industries*, 198 Wash. 507, 88 P. (2d) 825; *Eyer v. Department of Labor & Industries*, 1 Wn. (2d) 553, 96 P. (2d) 1115; *LaLone v. Department of Labor & Industries*, 3 Wn. (2d) 191, 100 P. (2d) 26; *Schafer Bros. Logging Co. v. Department of Labor & Industries*, 4 Wn. (2d) 720, 104 P. (2d) 747; *Sumerlin v. Department of Labor & Industries*, 8 Wn. (2d) 43, 111 P. (2d) 603; *Radich v. Department of Labor & Industries*, 10 Wn. (2d) 107, 115 P. (2d) 1022; *Northwest Metal Products v. Department of Labor & Industries*, 12 Wn. (2d) 155, 120 P. (2d) 855.

■ A case for the jury is not made out by expert evidence when it is shown that a condition might have, or could probably have been brought about by a certain happening. *Tomovich v. Department of Labor & Industries*, 126 Wash. 287, 218 Pac. 197; *Boyer v. Department of Labor & Industries*, 160 Wash. 557, 295 Pac. 737; *Himes v. Department of Labor & Industries*, 172 Wash. 248, 19 P. (2d) 933; *Cooper v. Department of Labor & Industries*, 195 Wash. 315, 80 P. (2d) 830; *Cole v. Department of Labor & Industries*, 200 Wash. 296, 93 P. (2d) 413; *Miller v. Department of Labor & Industries*, 1 Wn. (2d) 478, 96 P. (2d) 579.

In the *Cole* case the court stated:

"The substance of the testimony of these two witnesses included (1) an assumption of a prior weakened condition of the arterial wall, and (2) a conclusion that the jar con-

sequent upon the injury 'might' have accentuated the weakened condition and thus *probably* hastened the workman's death. The evidence was, at best, conjectural and speculative."

The following quotation from *Anton v. Chicago, M. & St. P. R. Co.,* 92 Wash. 305, 159 Pac. 115, states the rule to be as follows:

"Taking the opinion of the witness for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon."

The evidence produced in this case was, at best, conjectural and speculative and was not sufficient upon which to base a decision that the disease of which Rambeau died was caused by anything that happened to him at his place of employment. In other words, there was no substantial evidence produced at the hearing before the joint board to justify it in deciding for respondent.

Before recovery can be had upon the claim of occupational diseases, it must appear that the disease, of which complaint is made as the cause of injury, is peculiar to a given occupation and brought about by exposure by certain harmful conditions which are constantly present with all workmen in the occupation. *Polson Logging Co. v. Kelly,* 195 Wash. 167, 80 P. (2d) 412; *Romeo v. Department of Labor & Industries,* 19 Wn. (2d) 289, 142 P. (2d) 392.

The evidence does not disclose that the disease or infection from which Rambeau died was in any way caused by exposure to the fumes or smoke in that part of the ship in which he worked. That is, the evidence does not show that his death was caused or brought about by any harmful conditions which were constantly present with the workmen in the occupation of shipbuilding.

The judgment is reversed.

BEALS, C. J., MILLARD, and STEINERT, JJ., concur.

MALLERY, J. (dissenting)—The question here is: Did the deceased's employment subject him to certain fumes which injured his health to the extent that it was a causative factor of his death?

If his health was impaired by the fumes so that he was more susceptible to pneumonia or less able to resist it to such an extent that it was more probable than not that, but for the impairment he would not have succumbed, then the impairment was a causative factor contributing to his death.

The majority opinion assumes that the rule of *Hill v. Great Northern Life Ins. Co.,* 186 Wash. 167, 57 P. (2d) 405, wherein it was said:

"It is undoubtedly true that, in determining the cause of a death for which recovery is sought, the jury may not speculate or conjecture as between several causes. That is to say, where the evidence goes no further than to show that death may have resulted from one of several causes, for one or more of which there is liability, and for another or others of which there is none, then the jury cannot speculate or conjecture and return a verdict as for a cause for which there is liability." See, also, *Crowell v. Sunset Cas. Co.,* 21 Wn. (2d) 238, 150 P. (2d) 728.

and of *Frescoln v. Puget Sound Traction, L. & P. Co.,* 90 Wash. 59, 155 Pac. 395, in which the court said:

"The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another."

is applicable to the facts of this case. I disagree with that view of the evidence. I think it shows more than the bare fact that death *may* have resulted from an impairment of his health due to the fumes. It shows that it was more probable that the impairment was a causative factor than otherwise. This view of the evidence invokes the rule of *Letres v. Washington Co-Op. Chick Ass'n,* 8 Wn. (2d) 64, 111 P. (2d) 594:

"A verdict does not rest upon surmise or conjecture when there is evidence that there is a greater probability that a thing happened in such a way as to fix liability upon the person charged with such liability than there is that it happened in a way for which the person so charged would not be liable."

As was said in *Lynch v. Northern Life Ins. Co.*, 22 Wn. (2d) 912, 158 P. (2d) 90:

"That rule expresses no more than the general rule regarding the burden of the plaintiff to establish his case by a preponderance of the evidence. The bare possibility of the existence of a cause other than that relied upon does not preclude a preponderance of the evidence in its support. This is not a case where 'it is as likely that it happened from one cause as another.'"

I think the evidence supports the verdict.

[1]Reported in 163 P. (2d) 137.